# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BLUE EAGLE FARMING, LLC, et al.[1], | ) | **Chapter 11** |
| | ) | **Case No. 18-02395-TOM11** |
| Debtor. | ) | **(Jointly Administered)** |
| | ) | |
| | ) | |

## DISCLOSURE STATEMENT WITH RESPECT TO PLAN OF REORGANIZATION PROPOSED BY ROBERT BRADFORD JOHNSON

**BURR & FORMAN LLP**
/s/ Michael Leo Hall
Michael Leo Hall
Marc P. Solomon
Anna W. Akers
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Fax: (205) 458-5100

**COUNSEL FOR THE DEBTOR**

Dated: May 3, 2019

---

[1] In addition to Blue Eagle Farming, LLC, the Debtors include the following entities: (1) War-Horse Properties, LLLP; (2) Eagle Ray Investments, LLC; (3) H J Farming, LLC; (4) Blue Smash Investments, LLC; (5) Armor Light, LLC; (6) Forse Investments, LLC; and (7) Robert Bradford Johnson.

# TABLE OF CONTENTS

**I.** INTRODUCTION.................................................................................................................1

**II.** NOTICE TO HOLDERS OF CLAIMS.........................................................................1

**III.** EXPLANATION OF CHAPTER 11 ..............................................................................2

    <u>A</u>.    Overview of Chapter 11……………………………………………………...2

    <u>B</u>.    Plan of Reorganization…………………………………………………………3

**IV.** HISTORY OF THE DEBTOR, LITIGATION, AND CHAPTER 11 CASE.........................5

    A.    The Debtor ...............................................................................................5

    B.    The Debtor's Assets ................................................................................5

    C.    Factors Leading to Chapter 11 Filing ....................................................5

        1.    The Qui Tam Action in South Carolina...............................5
        2.    The Virginia Adversary Proceeding ..................................6
        3.    The Commercial Entities ...................................................7
        4.    Necessity for Bankruptcy Protection .................................7

    D.    Commencement of the Chapter 11 case...................................................8

    E.    Significant Events Since Commencement of Chapter 11 Case ..............8

        5.    Continuation of the Debtor's Business.................................8
        6.    Retention of Professionals ..................................................8
        7.    Schedules and Statements of Financial Affairs ..................9
        8.    Lift Stay Motion and Further Proceedings in the South Carolina Appeal...9
        9.    Bar Date ............................................................................10
        10.    Filing of Creditors' Plan ...................................................10
        11.    Filing of Debtor's Plan .....................................................11

    F.    Summary of Claims Filed or Asserted Against the Debtor ..................11

**V.** SUMMARY OF THE PLAN.............................................................................................12

A.	General Overview……………………………………………………………..12

B.	Summary of the Plan……………………………………………………………..12

C.	Classification and Treatment ...................................................................................15
	1.	Unclassified Claims Against the Debtor...................................................15
	2.	Classified Claims .....................................................................................18

D.	Means of Implementation of the Plan.....................................................................24
	1.	Funding. ...................................................................................................24
	2.	Settlement ................................................................................................25
	3.	Distributions.............................................................................................28
	4.	Claims Objections/Resolution ..................................................................28
	5.	Assertion of Estate Actions, Defenses and Counterclaims........................29
	6.	Management After the Effective Date. ......................................................30
	7.	Revesting of Assets..................................................................................30
	8.	Conditions to Confirmation ......................................................................30

E.	Effect of Confirmation of Plan ...............................................................................31
	1.	Discharge of Debtor .................................................................................31
	2.	Injunction ................................................................................................31

F.	Retention of Jurisdiction.........................................................................................31

G.	Modification or Revocation of Plan.........................................................................32

H.	Executory Contracts and Unexpired Leases .............................................................32
	1.	General Treatment; Rejected if Not Assumed ...........................................32
	2.	Cure Payments and Release of Liability....................................................32
	3.	Bar to Rejection Damages ........................................................................33
	4.	Rejection Claims ......................................................................................33

VI. CONFIRMATION OF THE PLAN ......................................................................................33

A.	Solicitation of Votes; Voting Procedures ................................................................33
	1.	Ballots and Voting Deadlines ...................................................................33
	2.	Parties in Interest Entitled to Vote ...........................................................34
	3.	Definition of Impairment .........................................................................34
	4.	Impaired Classes Under the Plan ..............................................................35
	5.	Unimpaired Classes Under the Plan ..........................................................35
	6.	Vote Required For Class Acceptance .........................................................35

B.	Confirmation Hearing .............................................................................................35

C.      Requirements For Confirmation of a Plan .............................................................36

D.      Cramdown .........................................................................................................39

VII. RISK FACTORS ...................................................................................................................40

A.      Insufficient Acceptances ...................................................................................41

B.      Confirmation Risks ...........................................................................................41

<u>C.</u>      Post-Confirmation Risks ...................................................................................41

VIII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF
THE PLAN: LIQUIDATION ANALYSIS ..................................................................................42

IX. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ......................42

A.      Importance of Obtaining Professional Tax Assistance .........................................42

B.      Discharge of Indebtedness ......................................................................................43

C.      Impact on Holders of Claims Against Debtors .....................................................43

D.      Circular 230 Disclosure .........................................................................................43

X. CONCLUSION .......................................................................................................................43

# I. <u>INTRODUCTION</u>

Robert Bradford Johnson (referred to herein as <u>"Johnson"</u> or the <u>"Debtor"),</u> submits this Disclosure Statement (the <u>"Disclosure Statement")</u> in connection with the Plan of Reorganization proposed by Robert Bradford Johnson, filed May 3, 2019 (the "Plan"). This Disclosure Statement is to be used in connection with the solicitation of votes on the Plan. A copy of the Plan is attached hereto as **Exhibit A.** Unless otherwise defined herein, capitalized terms used herein have the meanings ascribed thereto in the Plan (see Article I of the Plan entitled "Definitions, Construction, and Interpretation").

# II. <u>NOTICE TO HOLDERS OF CLAIMS</u>

The purpose of this Disclosure Statement is to enable Holders of Claims against the Debtor whose Claims are impaired under the Plan and are entitled to vote on the Plan to make an informed decision in exercising their right to vote to accept or reject the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT CAREFULLY.**

On _____, 2019, the Bankruptcy Court conducted a hearing on the adequacy of the Disclosure Statement and subsequently entered an order pursuant to section 1125 of the Bankruptcy Code (the <u>"Disclosure Statement Order")</u> approving this Disclosure Statement as containing information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor, typical of the solicited holders of Claims against the Debtor, to make an informed judgment with respect to the acceptance or rejection of the Plan. A copy of the Disclosure Statement Order is included in the materials accompanying this Disclosure Statement.

APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT REGARDING THE FAIRNESS OR MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

Each Holder of a Claim entitled to vote to accept or reject the Plan should read this Disclosure Statement and the Plan in their entirety before voting. No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code. Except for the Debtor and his professionals, no person has been authorized to use or promulgate any information concerning the Debtor, his businesses, or the Plan, other than the information contained herein, in connection with the solicitation of votes to accept or reject the Plan. No Holder of a Claim entitled to vote on the Plan should rely upon any information relating to the Debtor, his businesses, or the Plan other than that contained in the Disclosure Statement and the exhibits hereto. Unless otherwise indicated, the sources of all information set forth herein are the Debtor and his professionals.

**After carefully reviewing this Disclosure Statement, including the attached exhibits, please indicate your acceptance or rejection of the Plan by voting in favor of or against the**

**Plan on the enclosed ballot and returning the same, to the address set forth on the ballot, in the enclosed return envelope so that it will be received by the Balloting Agent, Burr & Forman LLP, 420 20th Street North, Suite 3400, Birmingham, Alabama 35203, Attention: Michael Leo Hall, no later than 5:00 p.m. Central Time on [_____DATE_____], 2019.**

If you do not vote to accept the Plan, or if you are not entitled to vote on the Plan, you may be bound by the Plan if it is accepted by the requisite Holders of Claims. See "Solicitation of Votes; Voting Procedures," "Vote Required for Class Acceptance," and "Cramdown" in Article VIII ("Confirmation of the Plan") below.

**TO BE SURE YOUR BALLOT IS COUNTED, YOUR BALLOT MUST BE RECEIVED NO LATER THAN 5:00 P.M. CENTRAL TIME ON [_____DATE_____], 2019.** For detailed voting instructions and the name, address, and phone number of the person you may contact if you have questions regarding the voting procedures, see "Ballots and Voting Deadline" in Section VIII.A.1 below.

Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan (the "Confirmation Hearing") on **[DATE___], 2019, at _____ .m. Central Time,** in the United States Bankruptcy Court for the Northern District of Alabama, Southern Division. **The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be filed and served on or before_____[DATE]_____, 2019,** in the manner described in Section VIII.B below under the caption, "Confirmation Hearing."

**THE DEBTOR SUPPORTS CONFIRMATION OF THE PLAN AND URGES ALL HOLDERS OF IMPAIRED CLAIMS TO ACCEPT THE PLAN.**

## III. EXPLANATION OF CHAPTER 11

### A.     *Overview of Chapter 11*

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11, the debtor in possession attempts to reorganize for the benefit of the debtor, its creditors, and other parties in interest.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor in property as of the date the bankruptcy petition is filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee. In the present chapter 11 case, the Debtor has remained in possession of his property and continued to operate his businesses as a debtor in possession.

The filing of a chapter 11 petition also triggers the automatic stay provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides, *inter alia,* for an automatic stay of all attempts to collect prepetition claims from the debtor or otherwise interfere with its property or business. Except as otherwise ordered by the bankruptcy court, the automatic stay remains in full force and effect until the effective date of a confirmed plan of reorganization.

The formulation of a plan of reorganization is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying the claims against and interests in the debtor.

Generally, unless a trustee is appointed, only the debtor may file a plan during the first 120 days of a chapter 11 case (the "Exclusive Period"). However, section 1121(d) of the Bankruptcy Code permits the court to extend or reduce the Exclusive Period upon a showing of "cause." After the Exclusive Period has expired, a creditor or any other party in interest may file a plan, unless the debtor has filed a plan within the Exclusive Period, in which case, the debtor is generally given 60 additional days (the "Solicitation Period") during which it may solicit acceptances of its plan. The Solicitation Period may also be extended or reduced by the court upon a showing of "cause."

In this case, after being extended by the Bankruptcy Court, the Exclusive Period was set for **May 5, 2019**.

### B.    *Plan of Reorganization*

Although referred to as a plan of reorganization, a plan may provide anything from a complex restructuring of an individual debtor or a debtor's business(es) and its related obligations to a simple liquidation of the debtor's assets. After a plan of reorganization has been filed, the holders of claims against or interests in a debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. This Disclosure Statement is presented to Holders of Claims against the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code.

If all classes of claims and equity interests accept a plan of reorganization, the bankruptcy court may nonetheless not confirm the plan unless the court independently determines that the requirements of section 1129 of the Bankruptcy Code have been satisfied. Section 1129 sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests" test and be "feasible." The "best interests" test generally requires that the value of the consideration to be distributed to the holders of claims and equity interests under a plan may not be less than those parties would receive if the debtor were liquidated pursuant to a hypothetical liquidation occurring under Chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, the court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under its plan without the need for further financial reorganization.

The Debtor believes that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code, including, in particular, the "best interests" test and the "feasibility" requirement. The Debtor supports confirmation of the Plan and urges all Holders of impaired Claims to accept the Plan.

Chapter 11 does not require that each holder of a claim against a debtor vote in favor of a plan of reorganization in order for the bankruptcy court to confirm the plan. At a minimum, however, the plan must be accepted by a majority in number and two-thirds in amount of those claims actually voting in at least one class of impaired claims under the plan. The Bankruptcy Code also defines acceptance of the plan by a class of equity interests (equity securities) as acceptance by holders of two-thirds of the number of shares actually voting. In the present case,

Classes 2, 3, 4, 5, 6, 7, 8, and 9 are Impaired Classes under the Plan, and the Holders of Claims in those Classes are entitled to vote to accept or reject the Plan.

In addition, classes of claims or equity interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class. A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified in any way under the plan. Modification for purposes of determining impairment, however, does not include curing defaults and reinstating maturity. In this case, Holder of certain Claims, Class 1, is not impaired and is conclusively presumed to accept the Plan and is not entitled to vote on the Plan. See "Summary of the Plan — Classification and Treatment —Classified Claims" in section V.C.2 for an identification of impaired and unimpaired Classes of Claims and Interests.

The bankruptcy court may also confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan. The process of confirming a plan under these conditions is known as a "cramdown."

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a class of rejecting claims if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive or retain on account of such junior claim or equity interest any property at all unless the senior class is paid in full, excluding exempt property and property included in the estate under section 1115 of the Bankruptcy Code.

A plan does not "discriminate unfairly" against a rejecting class of claims if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims, and (b) no senior class of claims is to receive more than 100% of the amount of the claims in such senior class.

The Debtor believes that the Plan has been structured so that it will satisfy these requirements as to any rejecting Class of Claims, and can therefore be confirmed, if necessary, over the objection of any Classes of Claims. The Debtor, therefore, reserves the right to request confirmation of the Plan under the "cramdown" provisions of section 1129 of the Bankruptcy Code. See "Cramdown" in section VI.D below.

# IV. HISTORY OF THE DEBTOR, LITIGATION, AND CHAPTER 11 CASE

### A. The Debtor

The Debtor grew up in Cherokee County, Alabama, where he received a full scholarship to play football at Auburn University. He lettered all four years at Auburn University and was a contributing team member for three Southeastern Conference championships. He graduated from Auburn University in 1990 with a Bachelor's Degree in Marketing and later received an MBA from Brenau University in Gainesville, Georgia. Johnson has been a "big brother" in the Big Brothers Big Sisters program for over 13 years. The Debtor currently lives in Alabama, is married, and has five daughters. Three of the Debtor's daughters were adopted from the foster care system, and two had known significant special needs at the time of adoption. The Debtor also serves as an alternate caregiver of one two-year-old medically fragile foster child.

The Debtor is the principal and the majority owner of all of the affiliate entities that have filed Chapter 11 bankruptcy. The Debtor owns 100% of each of Eagle Pharmacy, Inc. ("Eagle Pharmacy") and Royal Blue Medical, Inc. ("Royal Blue"), which are active related commercial businesses in the compounding pharmacy industry segment. Royal Blue has approximately seventy (70) individuals who are independent contractors. These independent contractors market the pharmaceutical products manufactured and sold by Eagle Pharmacy. Eagle Pharmacy has a dozen or so employees who manufacture the pharmaceutical products and run the business. Eagle Pharmacy's and Royal Blue's business and financial prospects are bright. Brad Johnson owns 100% of Blue Smash Investments, LLC ("Blue Smash"), which holds various investments. Brad Johnson owns 95% of War-Horse Properties, LLLP ("War-Horse"). War-Horse owns 100% of each of Eagle Ray Investments, LLC ("Eagle Ray") and Forse Investments, LLC ("Forse"), each of which own commercial and multi-family real estate with tenants. War-Horse also owns 100% of each of Blue Eagle Farming, LLC ("Blue Eagle") and H J Farming, LLC ("H J Farming"), each of which are active cattle farms. War-Horse also owns 100% of Armor Light, LLC ("Armor Light"). Brad Johnson owns 50% of each of BlueWave Healthcare Consultants, Inc. ("BlueWave") and Cobalt Healthcare Consultants, Inc. ("Cobalt"), which businesses are generally inactive. The United States claims to have a lien on some of their cash assets totaling around $275,000. Other than the two frozen bank accounts, there are no liens on Debtor's cash and accounts. The Debtor's companies currently have sufficient cash to fund their operations.

### B. The Debtor's Assets

As of the Petition Date, the Debtor's primary assets consist of the following:

(i) real property (the "Real Property"), valued in his Schedules at $ 355,000.00;

(ii) personal property valued in his Schedules at $6,968,342.93, (which includes 100% ownership interest in of each of Eagle Pharmacy and Royal Blue, and a 50% ownership interest in each of BlueWave and Cobalt); and

(iii) a 95% ownership interest in debtor War-Horse, which in turn owns 100% of all of the other Chapter 11 Debtors (Blue Eagle, Eagle Ray, H J Farming, Armor Light, and Forse, sometimes referred to collectively herein as the "Debtors") except Blue Smash (of which Johnson

owns a 100% interest.)  A more detailed description of these Debtors' assets can be found in the other disclosure statement, filed in conjunction with their corporate plan, and their bankruptcy schedules.

At least the Virginia Trustee contends that the Johnson estate also owns avoidance actions against various family members and trusts established for some of their benefit, which claims it asserts total in excess of $10 million.

### C.        *Factors Leading to Chapter 11 Filing*

#### 1.        The Qui Tam Action in South Carolina

In August 2015, the United States and others filed an action against BlueWave, Johnson, and others in the United States District Court for the District of South Carolina (the "Qui Tam Action").  In the Qui Tam Action, on Saturday, February 6, 2016, the United States applied for a prejudgment remedy against three individual defendants including Johnson.  The United States sought to attach and garnish certain specified property.  Some of the property was owned by defendants and other properties were owned by non-defendants (which non-defendants were ultimately owned at least in substantial part directly or indirectly by one or more of the defendants).  On Wednesday, February 10, 2016, the South Carolina Court entered an order granting the United States' application for certain prejudgment remedies (the "Prejudgment Order") under the Federal Debt Collection Procedures Act (the "FDCProcA").  Some writs were issued against the property of Johnson and some were issued against property of non-defendant Debtors.  The FDCProcA does not "supersede or modify . . . title 11."  28 U.S.C. Sec. 3003(c).  The United States contends that the writs issued and served pursuant to the Prejudgment Order were effective and are still effective to constitute liens on certain real property and bank accounts owned by some of the Debtors.  On January 31, 2018 in the Qui Tam Action, the jury entered a verdict against Johnson and two other individuals, but not any entities, including not BlueWave. The jury exonerated BlueWave. The amount of the jury verdict was $16,601,591.00, which was only approximately 8% of the amount sought by the United States..  The Judge then trebled the verdict and added other amounts to the civil judgment to bring the total amount of the judgment to more than $114,000,000.00 (the "Judgment").  Post-trial motions were filed in the Qui Tam Action and generally denied on May 23, 2018.

The Debtor denies any wrongdoing or liability and disputes the Judgment. The Debtor has appealed the Judgment in the Qui Tam Action (the "Qui Tam Appeal") to the Fourth Circuit Court of Appeals. The Debtor has filed his initial brief in the Qui Tam Appeal.

#### 2.        The Virginia Adversary Proceeding

Effective April 1, 2010, Johnson executed for BlueWave an independent contractor agreement with Health Diagnostic Laboratory, Inc. ("HDL") related to the marketing and sale of HDL tests in the southeast.  HDL was a competitor of Atherotech, Inc., Boston Heart Diagnostics, Liposcience and other specialty cardiovascular lab companies.  HDL filed a Chapter 11 bankruptcy petition on June 7, 2015 in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Virginia Court").  In May of 2016, the Virginia Court confirmed HDL's

Chapter 11 plan. As a part of that plan, a liquidating trust was created with Richard Arrowsmith being selected as the liquidating trustee (the "Virginia Trustee").

On March 9, 2018 the Virginia Trustee filed an adversary proceeding in the HDL bankruptcy case against Johnson and others (the "Virginia Adversary Proceeding") seeking to impose a constructive trust, among other claims for relief, on certain of the defendants named therein and certain of their assets. The defendants in the Virginia Adversary Proceeding also include some of the Chapter 11 Debtors in this bankruptcy proceeding, namely Blue Eagle, , Forse, Eagle Ray, War-Horse, H J Farming, and Blue Smash. The United States is also named as a defendant in the Virginia Adversary Proceeding.

### 3. Necessity for Bankruptcy Protection

The Debtor's bankruptcy filing was precipitated by two primary factors. First, at the time of his bankruptcy filing the Debtor was engaged in costly and highly contested lawsuits with the United States, which ultimately resulted in a judgment against the Debtor in excess of $100 million. The Debtor strongly contests this judgment, and initiated an appeal. Second, costly and expansive litigation instituted by the Virginia Trustee, who seeks a judgment in the estimated amount of $650 million and a constructive trust was a precipitating factor. The collective present value of all of the assets of all the Debtors is less than the amount of the Judgment held by the United States or the claims of the Virginia Trustee; the value of the assets is far greater than the collective amount of all of the other debts and claims. Some of the Debtors' assets have substantial value, which value is greater as a going concern than in liquidation. These competing financial obligations resulted in the need to reorganize the Debtor's financial and business affairs in order to preserve the value of his estate. The Debtor commenced this Chapter 11 bankruptcy case to achieve that result.

### D. Commencement of the Chapter 11 case

From June 8 to June 9, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"), with the Clerk of this Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. § 1107 and 1108 of the Bankruptcy Code.

### E. Significant Events Since Commencement of Chapter 11 Case

### 1. Continuation of the Debtor's Business

Since the filing of the Chapter 11 case, the Debtor has continued to operate his businesses and manage his property as a debtor-in-possession.

### 2. Retention of Professionals

(a) Bankruptcy Counsel.

On June 27, 2018, the Bankruptcy Court entered an order approving the retention and employment of Burr & Forman, LLP as bankruptcy counsel for the Debtors.

On June 27, 2018, the Bankruptcy Court entered an order approving the retention and employment of the Evans Law Firm P.C. as corporate counsel for the Corporate Debtors.

(b) Litigation Counsel.

On October 5, 2018, the Bankruptcy Court entered an order approving the retention and employment of Barnwell Whaley Paterson & Helms, LLC as special counsel for the Debtor in connection with the appeal of the Qui Tam Action.

On October 5, 2018, the Bankruptcy Court entered an order approving the retention and employment of Nexsen Pruet, LLC as special counsel for the Debtor in connection with the appeal of the Qui Tam Action.

(c) Other Professionals.

On July 13, 2018, the Bankruptcy Court entered an order approving the retention and employment of Peter Colmer as the Debtors' Chief Restructuring Advisor in connection with the chapter 11 cases.

### 3. Schedules and Statements of Financial Affairs

On July 11, 2018 the Debtors filed the Schedules and Statements of Financial Affairs (the "Schedules and Statements").

### 4. Qui Tam Lift Stay Motion and Further Proceedings in the Qui Tam Litigation

On the June 25, 2018, Debtors filed a Limited Motion For Relief From Stay (the "Stay Motion") to proceed with the Qui Tam Appeal. On July 12, 2018, this Court entered its Order granting, in part, Debtors' Stay Motion (the "Stay Order"). By the Stay Order, this Court modified the automatic stay such that Debtors could file the Qui Tam Appeal by the non-bankruptcy deadline.

After the automatic stay was lifted, Debtors filed a notice of appeal.

### 5. Bar Date

This Bankruptcy Court established October 1, 2018 as the deadline for filing proofs of claim against the Debtor, and December 10, 2018 as the governmental deadline for filing proofs of claims against the Debtor.

### 6. Filing of Debtor's Plan

On May 3, 2019, the Debtor filed the Plan and this Disclosure Statement.

### _F._ _Summary of Claims Filed or Asserted Against the Debtor_

Based on the Schedules and Statements and the proof of claims filed by creditors, as of the Bar Date, the primary claims asserted against Debtors consist of the following: (i) a claim in the amount of $27,200.00 by Claire Wilcox Johnson; (ii) a claim in the amount of $69,000.00 for child support by Claire Wilcox Johnson; (iii) a claim in the amount of $182,900.00 by Claire Wilcox Johnson; (iv) a claim in the amount of $114,148,661.68 by the United States; (v) a claim

in the amount of $8,123.94 by Teddy J. Faust; (vi) a claim in the amount of $1,800.00 by the IRS; (vii) a claim in the amount of $28,537,165.20 by Scarlett Lutz and Kayla Webster; (viii) a claim in the amount of $515,000.00 by Pietragallo Gordon Alfano Bosick & Raspanti LLP; (ix) a claim in the amount of $50,717.00 by William J. Tuck P.A.; (x) a claim in the amount of Chase Auto Finance in the amount of $42,850.00; (xi) a claim in the amount of $4,600.00 by Pinnacle Consulting, Inc.; (xii) a claim in the amount of $3,951.06 by Chase Visa; (xiii) a claim by Chris Riedel; (xiv) a claim by Dr. Michael Mays; (xv) a claim in the amount of $71,257.50 by Michael R. Waters.

## V. <u>SUMMARY OF THE PLAN</u>

### A. *General Overview*

The Plan provides for the reorganization of the Debtor's Estate and the orderly payment of Allowed Claims. More specifically, the Debtor will pay in full all Allowed Administrative and Priority Claims on the Effective Date, unless otherwise agreed to by the holder of any such claim, and shall transfer all of his pre-petition, non-exempt assets (including causes of action) to an irrevocable trust to be held, operated and managed by an independent fiduciary for the benefit of all Allowed and Disputed Unsecured Claims and, if enough claims are disallowed, the Debtor. Creditors will receive significantly more than they would receive in a chapter 7 liquidation.

### B. *Summary of the Plan*

On the Effective Date, property in the Debtor's Estate as of the Effective Date shall be transferred to the Johnson Trust in accordance with the terms of section 5.09 of the Plan, the Trust Agreement, and applicable nonbankruptcy law. The type, mode and manner of the transfer of property to the Johnson Trust shall be made in a way that enhances and maintains the value of such property. The Plan Trustee shall pay Holders of Claims all payments due under the Plan. Holders of Unsecured Claims in Class 7 shall be beneficiaries of the Johnson Trust according to their Pro Rata Shares calculated as of the Effective Date. In the event that a Claim in Class 7 is Disallowed pursuant to a Final Order, the Holder of such Claim shall immediately forfeit the Holder's beneficial interest in the Johnson Trust.

The Johnson Trust shall be operated and managed by the Plan Trustee in accordance with the terms and conditions of this Plan and the Trust Agreement. In addition to any other powers and rights provided for in this Plan and the Trust Agreement, the Plan Trustee shall have the power and right to liquidate or sell any property of the Johnson Trust to any third party in an arms-length transaction for fair market value, but only after providing to the beneficiaries of the Johnson Trust: (i) reasonable notice of such proposed liquidation or sale, and (ii) an opportunity to object to such proposed liquidation or sale and request a hearing with the Bankruptcy Court. To the extent the Debtor is a manager or has management rights with respect to any entity, including those entities held in the Johnson Trust, nothing in this Plan or the Trust Agreement shall expand or diminish the Debtor's rights as manager of any entity under applicable law. In addition, the Plan Trustee may employ and compensate the Debtor for any management services provided to the Johnson Trust at the market rate for such services. To the extent any payments are made to the Debtor by the Plan Trustee or any of the entities who are debtors in the Bankruptcy Case for services or for costs and expenses, any such payments shall be subject to

approval of the Bankruptcy Court. Any salary and compensation paid to the Debtor in exchange for management services at the market rate shall vest with the Debtor.

The Plan Trustee shall be obligated to take affirmative action to manage and operate the Johnson Trust, and the assets and entities held therein, in a way that maximizes the value of such assets and entities, including without limitation the duty to determine the optimal time and method for operating or selling any assets or businesses and to operate such businesses until such time. To the extent necessary or appropriate to maximize the value of the assets of the Johnson Trust, the Plan Trustee shall proceed in an orderly fashion to liquidate a portion of the trust assets, until the occurrence of a Trust Change Event, when the Plan Trustee may proceed with liquidation of the balance of the trust assets. Upon the occurrence of a Trust Change Event, the Bankruptcy Court may appoint a different Plan Trustee to liquidate the trust assets. In addition to any other powers and rights, the Plan Trustee shall have the power and discretion to liquidate assets of the Johnson Trust to the extent necessary or appropriate to make Distributions to Holders of Allowed Claims. To the extent Distributions are made to Holders of Allowed Claims, the Plan Trustee shall make Distributions in an amount (i) equal to each Holder's Pro Rata Share (calculated at the time of the Distribution) up to the value of the Holder's Allowed Claim as of the Effective Date, but (ii) not less than the value of Projected Disposable Income. After all such Distributions are made, the Johnson Trust shall terminate and the residual trust *res*, if any, shall vest with Johnson and other debtors in the Bankruptcy Case according to their rights and interests in such property prior to the Effective Date.

The Holders of Allowed Claims shall receive more value and retain more rights under this Plan, as of the Effective Date, than they would receive in a liquidation under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

The terms and conditions of the Trust Agreement are incorporated herein by reference for all purposes. To the extent there is any inconsistency between the terms of this Plan and the Trust Agreement, the terms of the Plan shall control.

The sources of Cash necessary for the Debtor to pay Allowed Claims that are to be paid in Cash by the Debtor on the Effective Date will be the Cash of the Debtor on hand as of the Effective Date.

### C. <u>*Classification and Treatment*</u>

The following is a summary of the classification and treatment of Claims under the Plan. Reference should be made to the entire Disclosure Statement and to the Plan for a complete description of the classification and treatment of Claims and Interests.

THIS IS ONLY A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN. THE PLAN INCLUDES OTHER PROVISIONS THAT MAY AFFECT YOUR RIGHTS. YOU ARE URGED TO READ THE PLAN IN ITS ENTIRETY BEFORE VOTING ON THE PLAN.

### 1. Unclassified Claims Against the Debtor

In accordance with section 1123(a)(1) of the Bankruptcy Code, unclassified Claims against the Debtor consist of Administrative Claims and Priority Tax Claims. There are no Priority Tax

Claims against the Debtor, other than the Allowed Claim of Faust in the amount of $8,123.94. The Allowed Claim of Faust shall be treated as a Secured Claim in the full amount of the Allowed Claim, and shall be paid in full on the Effective Date, to the extent not already paid or otherwise satisfied, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim and any lien securing such Claim. Based on the books and records and projections for future expenses, the Debtors presently estimate the amounts of such Claims as follows[2]:

Administrative Expense Claims: The Debtor is unaware of any Administrative Claim other than Fee Claims and Administrative Claims incurred in the Ordinary Course of Business.

Time for Filing Administrative Claims. The Holder of any Administrative Claim that is incurred, accrued or in existence prior to the Confirmation Date, other than (i) a Fee Claim, or (ii) a liability incurred in the Ordinary Course of Business, must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim no later than fourteen (14) days prior to the first date scheduled by the Bankruptcy Court for the Confirmation Hearing. Such request must be filed and served as required by applicable Bankruptcy Rules and include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged. Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party and the Debtor within thirty (30) days after the filing of the applicable request for payment or allowance of an Administrative Claim.

Time for Filing Fee Claims. Any Person who holds or asserts an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application no later than ten (10) Business Days after the Confirmation Date. Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being barred and discharged. Objections to Fee Claims, and any motion or claim for disgorgement or disallowance of any fees of Professionals previously paid or allowed, must be filed no later than thirty (30) days after the Effective Date.

Allowance of Administrative Claims. An Administrative Claim with respect to which a request for payment is required and has been properly filed pursuant to Section 2.01(a) of the Plan shall become an Allowed Administrative Claim if no timely objection is filed. If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order. An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to Section 2.01(b) of the Plan, shall become an Allowed Administrative Claim upon the timely filing of a Fee Application, subject to disallowance only upon entry of a Final Order.

Payment of Allowed Administrative Claims. Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Confirmation Date with respect to

---

[2] The estimates for administrative expenses include the estimated fees of the Debtor's professionals through confirmation for the Debtor. To the extent confirmation is delayed beyond the time frame anticipated, administrative expenses will increase.

Administrative Claims against the Debtors, or agrees to a different treatment, each Holder of an Allowed Administrative Claim (other than Fee Claims, and other than Allowed Administrative Claims incurred in the Ordinary Course of Business, which are paid pursuant to Section 2.01(e) below) shall receive in full satisfaction, release and discharge of and exchange for such Administrative Claim, and after the application of any retainer or deposit held by such Holder, Cash equal to the Allowed amount of such Administrative Claim on the later of the Effective Date, or upon entry of a Final Order allowing the Administrative Claim. Notwithstanding the timely and proper filing and service of any objection to a Fee Claim, such Fee Claim shall be paid on the Effective Date unless the Debtors, in their sole discretion, defer payment until after settlement, withdrawal or resolution of such objection through the entry of a Final Order. In the event a Fee Claim is Disallowed pursuant to a Final Order, any payment to the Holder of such Claim may be subject to refund, except as may be provided by order of the Bankruptcy Court or an appellate court.

Administrative Claims Incurred in the Ordinary Course of Business. Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtor during the Bankruptcy Case (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes, or alleged Administrative Claims arising in tort) shall not be required to file any request for payment of such Claims. Each Administrative Claim incurred in the Ordinary Course of Business of the Debtor will be paid pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim, without any further action by the Holder of such Administrative Claim. The Debtor reserves and shall have the right to object before the Effective Date to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

## 2. Classified Claims

UNLESS OTHERWISE NOTED, THE DEBTOR'S ESTIMATES OF THE NUMBER AND AMOUNT OF CLAIMS IN EACH CLASS SET FORTH IN THE TABLE BELOW INCLUDE ALL CLAIMS ASSERTED AGAINST THE DEBTOR WITHOUT REGARD TO THE VALIDITY OR TIMELINESS OF THE FILING OF THE CLAIMS. THUS. BY INCLUDING ANY CLAIM IN THE ESTIMATES SET FORTH BELOW, THE DEBTOR IS NOT WAIVING ITS RIGHTS TO OBJECT TO ANY CLAIM ON OR BEFORE THE CLAIM OBJECTION DEADLINE ESTABLISHED BY THE PLAN.

The following tables summarize the classification and treatment of the Claims against the Debtor, an estimate of the numbers and amounts of Claims in each class (such amounts are derived from the Debtor's Schedules or Proofs of Claims filed by Creditors, whichever amounts are higher), and the impaired or unimpaired nature of each class:

| Class | Treatment |
| --- | --- |
| Class 1 – Non-Tax Priority Claim for Child Support | Unimpaired. |

| | |
|---|---|
| Estimated Amount: $69,000.00<br><br>Estimated Number: 1 | The rights of Claire Wilcox Johnson to child support shall not be altered by the Plan, and the Debtor shall continue to pay child support as required by applicable law. |
| **Class 2 – Non-Tax Priority Claim for Other Domestic Support Obligation**<br><br>Estimated Amount: $27,200.00<br><br>Estimated Number: 1 | Impaired.<br><br>Claire Wilcox Johnson shall receive twenty-four equal monthly installments of $1,000.00 each, with the first installment due and payable thirty (30) days after the Effective Date, or such other similar, but less favorable, treatment to which Claire Wilcox Johnson and the Debtor agree in writing, in full satisfaction, settlement, release and discharge of and in exchange for any and all Allowed Non-Tax Priority Claims in Class 2. |
| **Class 3 – Secured Claim Of Claire Wilcox Johnson**<br><br>Estimated Amount: $182,900.00<br><br>Estimated Number: 1 | Impaired.<br><br>The Allowed Claim in Class 3 was filed jointly against the Debtor and Forse. The Allowed Claim in Class 3, including but not limited to any and all rights and interests of Claire Wilcox Johnson in the marital property described in the proof of claim filed by Claire Wilcox Johnson, shall be altered, satisfied and extinguished as of the Effective Date, and, in lieu thereof, Claire Wilcox Johnson shall be entitled to reside in the marital property through and including December 31, 2022 and shall be responsible for all maintenance and repairs to the marital property, except that Forse Investments, LLC (the current owner of the property) shall pay for necessary capital improvements to the property in accordance with and subject to the chapter 11 plan of reorganization filed by Forse Investments, LLC in the Bankruptcy Case. Alternatively, the Holder of the Allowed Claim in Class 3 shall be entitled to similar, but less favorable, treatment to which the Holder and the Debtor agree in writing. |
| **Class 4 – Secured Claim of the United States**<br><br>Estimated Amount: TBD<br><br>Estimated Number: 1 | Impaired.<br><br>Class 4 consists of the Claims of the United States to the extent it is secured by a Lien on property of the Estate, if any. To the extent a Holder of a Secured Claim in Class 4 may be entitled to make an election under section 1111(b) |

| | |
|---|---|
| | of the Bankruptcy Code, and to the extent a Holder makes such election in a timely manner by filing notice of such election on or before the hearing on approval of the Disclosure Statement, or, upon consent of the Debtors, on or before the last date scheduled for the Confirmation Hearing, the Collateral encumbered by any Lien of the Holder shall be surrendered to the Holder on the Effective Date in full satisfaction, settlement, release, and discharge of and in exchange for any Claim held by the Holder and any Lien securing such Claim. In the event a Final Order is entered disallowing any Secured Claim of a Holder of a Secured Claim in Class 4, such Holder shall receive no Distribution as a Holder of a Claim in Class 4, and any Lien shall be deemed void and extinguished effective as of the Effective Date, in which event the Holder shall file and record, within ten (10) Business Days, a full satisfaction and discharge of any Lien of public record.  To the extent a Secured Claim in Class 4 is Allowed, and the Allowed Claim is not subject to reconsideration under Section 10.05(d) of this Plan, the Collateral encumbered by the Lien of the Holder shall be surrendered to the Holder in full satisfaction, settlement, release, and discharge of and in exchange for the Secured Claim and any Lien securing such Claim. |
| **Class 5 – Secured Claim of Chase Auto Finance**<br><br>Estimated Amount: $ 43,500.00<br><br>Estimated Number: 1 | Impaired.<br><br>The Allowed Claim of Chase Auto Finance shall be treated as a Secured Claim in the full amount of the Allowed Claim, and shall be paid an amount equal to the Allowed Claim, minus any payments made to Chase Auto Finance after the Petition Date and prior to the Confirmation Date as follows: (a) a cash payment of $6,000.00 on the Effective Date; and (b) with the balance to be paid in forty (40) equal monthly installments with the first monthly installment due and payable thirty (30) days after the Effective Date. Chase Auto Finance shall retain its Lien until the amount of the Allowed Claim is paid in full. |
| **Class 6 – Secured Claim of Pinnacle Consulting, Inc.** | Impaired.<br><br>The Allowed Claim of Pinnacle Consulting, Inc. is secured by a Lien on a retainer paid by the Debtor prior |

| | |
|---|---|
| Estimated Amount: $4,600.00<br><br>Estimated Number: 1 | to the Petition Date (the "Pinnacle Retainer"). The Allowed Claim shall be treated as a Secured Claim in the full amount of the Allowed Claim. After deducting the amount of any Administrative Expenses incurred in the Ordinary Course of Business from the Pinnacle Retainer, Pinnacle Consulting, Inc. shall apply $1,000.00 of the balance of the Pinnacle Retainer, if any, to satisfy the Allowed Claim in full, and shall deliver to the Debtor the remaining balance of the Pinnacle Retainer within ten (10) days after the Confirmation Date, which amount shall be used by the Debtor (or his successors and assigns, including but not limited to the Johnson Trust) to fund or pay obligations under the Plan. |
| **Class 7 – General Unsecured Claims**<br><br><br>Estimated Amount: Unknown<br><br>Estimated Number: 8 | Impaired.<br><br>Class 7 consists of all Unsecured Claims (other than Convenience Class Claims) that are, as of the Effective Date, (i) Allowed, or (ii) Disputed Claims. Each Holder of an Unsecured Claim in Class 7 shall receive a beneficial interest in the Johnson Trust in the amount of the Holder's Pro Rata Share, calculated as of the Effective Date, in full satisfaction, settlement, release, and discharge of and in exchange for any Claim held by any such Holder. For the avoidance of doubt, the final Distribution to be made to Holders of Allowed Claims in Class 7 will be calculated based upon each Holder's Pro Rata Share at the time of Distribution in accordance with Article VI of this Plan and the Trust Agreement. |
| **Class 8 – Convenience Class Claims**<br><br>Estimated Amount: $3,951.06<br><br>Estimated Number: 1 | Impaired.<br><br>Class 8 consists of Convenience Class Claims. Convenience Class Claims are deemed Allowed, and Holders of such Claims shall be paid 80% of their Allowed Claims on the Effective Date in full satisfaction, settlement, release, and discharge of and in exchange for such Claims |
| **Class 9 – Interests of Debtor**<br><br><br>Estimated Amount: Unknown | Impaired.<br><br>Class 9 consists of any and all beneficial and ownership interests of the Debtor that is property of the Debtor's Estate under section 541 and 1115 of the Bankruptcy Code. On the Effective Date, all beneficial and ownership interests of the Debtor that are property of the Debtor's Estate as of the |

| Estimated Number: Unknown | Effective Date shall be transferred to and held by the Johnson Trust for the benefit of the Estate and the Holders of Allowed Unsecured Claims, except for all property that is (a) exempt under section 522 of the Bankruptcy Code or (b) included in the Estate under section 1115 of the Bankruptcy Code, which property shall be retained by, and vest in, the Debtor as of the Confirmation Date. Any interests not transferred to the Johnson Trust shall be retained by and vested with the Debtor. |
| --- | --- |

### D.    *Means of Implementation of the Plan*

On the Effective Date, property in the Debtor's Estate as of the Effective Date shall be transferred to the Johnson Trust in accordance with the terms of section 5.09 of the Plan, the Trust Agreement, and applicable nonbankruptcy law.  The type, mode and manner of the transfer of property to the Johnson Trust shall be made in a way that enhances and maintains the value of such property.  The Plan Trustee shall pay Holders of Claims all payments due under the Plan. Holders of Unsecured Claims in Class 7 shall be beneficiaries of the Johnson Trust according to their Pro Rata Shares calculated as of the Effective Date. In the event that a Claim in Class 7 is Disallowed pursuant to a Final Order, the Holder of such Claim shall immediately forfeit the Holder's beneficial interest in the Johnson Trust.

The Johnson Trust shall be operated and managed by the Plan Trustee in accordance with the terms and conditions of this Plan and the Trust Agreement. In addition to any other powers and rights provided for in this Plan and the Trust Agreement, the Plan Trustee shall have the power and right to liquidate or sell any property of the Johnson Trust to any third party in an arms-length transaction for fair market value, but only after providing to the beneficiaries of the Johnson Trust: (i) reasonable notice of such proposed liquidation or sale, and (ii) an opportunity to object to such proposed liquidation or sale and request a hearing with the Bankruptcy Court. To the extent the Debtor is a manager or has management rights with respect to any entity, including those entities held in the Johnson Trust, nothing in this Plan or the Trust Agreement shall expand or diminish the Debtor's rights as manager of any entity under applicable law.  In addition, the Plan Trustee may employ and compensate the Debtor for any management services provided to the Johnson Trust at the market rate for such services. To the extent any payments are made to the Debtor by the Plan Trustee or any of the entities who are debtors in the Bankruptcy Case for services or for costs and expenses, any such payments shall be subject to approval of the Bankruptcy Court. Any salary and compensation paid to the Debtor in exchange for management services at the market rate shall vest with the Debtor.

The Plan Trustee shall be obligated to take affirmative action to manage and operate the Johnson Trust, and the assets and entities held therein, in a way that maximizes the value of such assets and entities, including without limitation the duty to determine the optimal time and method for operating or selling any assets or businesses and to operate such businesses until such time.  To the extent necessary or appropriate to maximize the value of the assets of the Johnson

Trust, the Plan Trustee shall proceed in an orderly fashion to liquidate a portion of the trust assets, until the occurrence of a Trust Change Event, when the Plan Trustee may proceed with liquidation of the balance of the trust assets. Upon the occurrence of a Trust Change Event, the Bankruptcy Court may appoint a different Plan Trustee to liquidate the trust assets. In addition to any other powers and rights, the Plan Trustee shall have the power and discretion to liquidate assets of the Johnson Trust to the extent necessary or appropriate to make Distributions to Holders of Allowed Claims. To the extent Distributions are made to Holders of Allowed Claims, the Plan Trustee shall make Distributions in an amount (i) equal to each Holder's Pro Rata Share (calculated at the time of the Distribution) up to the value of the Holder's Allowed Claim as of the Effective Date, but (ii) not less than the value of Projected Disposable Income. After all such Distributions are made, the Johnson Trust shall terminate and the residual trust *res*, if any, shall vest with Johnson and other debtors in the Bankruptcy Case according to their rights and interests in such property prior to the Effective Date.

The Holders of Allowed Claims shall receive more value and retain more rights under this Plan, as of the Effective Date, than they would receive in a liquidation under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

The terms and conditions of the Trust Agreement are incorporated herein by reference for all purposes. To the extent there is any inconsistency between the terms of this Plan and the Trust Agreement, the terms of the Plan shall control.

The sources of Cash necessary for the Debtor to pay Allowed Claims that are to be paid in Cash by the Debtor on the Effective Date will be the Cash of the Debtor on hand as of the Effective Date.

1.          **Claims Objections/Resolution**

Any party in interest, including the Debtor and the Johnson Trust, may file objections to Claims (other than Claims that are deemed Allowed under the Plan). Except as provided in Section 2.01 of the Plan with respect to Administrative Claims and Fee Claims, all objections to Claims must be filed and served in accordance with this section of the Plan within thirty (30) days after the Effective Date, and any objection to a Claim that is not filed and served in accordance herewith on or before the Effective Date shall be forever barred, estopped and enjoined.

An objection to a Claim will be deemed properly served on the Holder thereof if service is effected by any of the following methods: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified and designated on the proof of Claim or any attachment thereto for receipt of notices; (c) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the Holder in the Bankruptcy Case; or (d) if no proof of Claim has been filed, by first class mail, postage prepaid, on the Holder of such Claim at the address set forth in the Schedules.

From and after the Effective Date, the Plan Trustee is authorized to compromise all Claims, Disputed Claims, and Liens and to execute necessary documents, including Lien releases

(subject to the written consent of the party having such Lien) and stipulations of settlement, compromise or release, without further order of the Bankruptcy Court or consent of any party, as long as such actions are in accordance with the terms of the Plan and Trust Agreement.

**2.**          **Assertion of Estate Actions, Defenses and Counterclaims**

Except as set forth in the Plan or the Confirmation Order, effective as of the Effective Date, without further action by any party, all Causes of Action and Claim Objections shall automatically transfer and be deemed to be vested in the Johnson Trust. From and after the Effective Date, and except as set forth in the Plan, the Trust Agreement, or the Confirmation Order, the Plan Trustee shall have the exclusive and absolute right and obligation to preserve, prosecute, or maintain all Causes of Action and Claim Objections vested in or transferred to the Johnson Trust under the Plan during the pendency of the Johnson Trust. The Plan Trustee may settle or compromise Causes of Action and Claim Objections only upon the written consent of the Debtor, which consent shall not be unreasonably withheld. In the event of a Trust Change Event, the Plan Trustee's prosecution of the Causes of Action and Claim Objections shall be subject to the consent and control of the Holders of Allowed Claims in Class 7 and shall no longer be subject to the consent of Johnson; provided, however, that defense of any and all actions to determine the dischargeability of any debt of Johnson or the other debtors in the Bankruptcy Case under section 523 of the Bankruptcy Code shall be transferred to and vest with Johnson or the other debtors, as applicable. No claim, right, cause of action, or other asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property in the Schedules or the Disclosure Statement unless otherwise ordered by the Bankruptcy Court.

Except as provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any Person, to the extent such Person asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, and (ii) the turnover of any property of the Debtor's Estate.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, cause of action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date. The Debtor (or his successors and assigns, including but not limited to the Johnson Trust) shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtor had immediately prior to the Petition Date fully as if the Bankruptcy Case had not been commenced.

Except as otherwise set forth in the Plan, the Debtor (or his successors and assigns, including but not limited to the Johnson Trust) may, but shall not be required to, set off against or recoup from any Claim or any payment or Distribution to be made pursuant to the Plan in respect of such Claim, any Claim or Cause of Action of any nature whatsoever that the Debtor may have to the fullest extent permitted under applicable law. Any dispute related to the setoff or recoupment rights of the Debtor shall be determined by the Bankruptcy Court. Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall

constitute a waiver or release by the Debtor of any such Claims or Causes of Action that the Debtor may have against such Holder or any affiliate of such Holder.

### 3. Management After the Effective Date.

The Plan Trustee shall manage and control the Debtor's assets held in the Johnson Trust in accordance with the terms of the Plan and Trust Agreement after the Effective Date, and to the extent this Plan provides for the sale of certain of the Debtor's assets, the Plan Trustee shall manage and control the sale of those assets and shall liquidate such assets as expeditiously as reasonably possible, consistent with the terms of the Plan and the goal of maximizing the value thereof for the benefit of the Holders of Claims and the Debtor.

In addition, the Plan Trustee may employ and compensate the Debtor for any management services provided to the Johnson Trust at the market rate for such services. To the extent the Debtor is a manager or has management rights with respect to any entity, including those entities held in the Johnson Trust, nothing in this Plan or the Trust Agreement shall expand or diminish the Debtor's rights as manager of any entity under applicable law. To the extent any payments are made to the Debtor by the Plan Trustee or any of the entities who are debtors in the Bankruptcy Case for services or for costs and expenses, any such payments shall be subject to approval of the Bankruptcy Court. Any salary and compensation paid to the Debtor in exchange for management services at the market rate shall vest with the Debtor.

### 4. Vesting of Assets

Except as otherwise provided in this Plan and the Confirmation Order, any and all property and assets of the Debtor and the Estate shall vest in accordance with the terms of the Plan free and clear of all Claims, Liens, encumbrances, charges and other interests. Commencing on the Effective Date, the Debtor or the Johnson Trust, as the case may be, may deal with such property and assets and conduct business without any supervision by, or permission from, the Bankruptcy Court or the Office of the United States Trustee, and free of any restriction imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Case, except as explicitly provided in the Plan or the Confirmation Order.

### E. *Effect of Confirmation of Plan*

### 1. Discharge of Debtor

To the fullest extent permitted by applicable law, and except as otherwise provided in the Plan, the operative documents implementing the Plan, the Confirmation Order, or the Code: (a) upon the completion of all payments required under the Plan or grant of early discharge by the Bankruptcy Court, the Confirmation Order shall operate as a discharge under section 1141(d)(1) of the Bankruptcy Code, and as a release of any and all Claims, Debts, Liens, Security Interests, and encumbrances of and against the Debtor and all property of the Debtor or the Estate that arose before the Confirmation Date, including without limitation, any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all principal and interest, whether accrued before, on, or after the Petition Date, regardless of whether (i) a Proof of Claim has been filed or deemed filed, (ii) such Claim has been listed on the Debtor's Schedules, (iii) such Claim has been Allowed pursuant to § 502 of the Bankruptcy Code, or (iv) the Holder of such Claim

has voted on the Plan or has voted to reject the Plan; and (b) from and after the completion of all payments required the Plan (i) all Holders of Claims shall be barred and enjoined from asserting against the Debtor, the Estate, or any property thereof, including, without limitation, property transferred to the Johnson Trust under this Plan, any Claims, Debts, Liens, Security Interests, and encumbrances of and against all property of the Estate, and (iii) the Debtor shall be fully and finally discharged of any liability or obligation on a Disallowed Claim. Effective upon the completion of all payments required under the Plan or grant of early discharge by the Bankruptcy Court, and except as expressly provided in this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective Date. Except as expressly provided in this Plan or the Confirmation Order, any Holder of a discharged Claim will be precluded from asserting against the Debtor or any assets of the Debtor any other or further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date. Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any manner the discharge granted upon Confirmation of the Plan pursuant to § 1141 of the Bankruptcy Code, including the Debtor's right to seek an early discharge. For the avoidance of doubt, nothing in this Plan diminishes any cause of action that either the United States or the HDL Trustee has asserted that the disputed claims that Johnson owes to them are non-dischargeable, with such causes of action being subject to resolution by the Bankruptcy Court in the ordinary course after confirmation.

### 2. Injunction

*All Holders of Claims, Liens, Security Interests, encumbrances, rights and interests in, to or against the Debtor or any of his assets shall be prohibited from asserting, prosecuting or collecting such Claims, Liens, Security Interests, encumbrances, rights and interests against the Debtor and his property; provided, however, that such stay shall not apply to any Claim asserted against the Debtor by a Holder based upon a default by the Debtor in performance of his obligations to the Holder under the Plan. Upon completion of payments required under the Plan or grant of early discharge, all such Holders shall be permanently enjoined and prohibited from asserting, prosecuting or collecting such Claims, Liens, Security Interests, encumbrances, rights and interests against the Debtor or his property; provided, however, that such injunction shall not apply to any Claim asserted against the Debtor by a Holder based upon a default by the Debtor in performance of his obligations to the Holder under the Plan. Nothing herein is intended to limit the scope of any stay or discharge provided for under applicable provisions of the Bankruptcy Code.*

*Unless otherwise provided in this Plan or the Confirmation order, all injunctions or stays provided for in the Bankruptcy Case pursuant to section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Case is closed.*

*If allowed by the Bankruptcy Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and*

*disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.*

### *F.*     *Retention of Jurisdiction*

Until the case is closed, the Bankruptcy Court will retain the jurisdiction as is legally permissible under applicable law, including under sections 105(a) and 1142 of the Bankruptcy Code, including that necessary to ensure that the purposes and intent of the Plan are carried out and to hear and determine all Claims and objections thereto that could have been brought before the entry of the Confirmation Order. The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against in the Debtor and to enforce all causes of action that may exist on behalf of Debtor, over which the Bankruptcy Court otherwise has jurisdiction.

### *G.*     *Modification or Revocation of Plan*

The Debtor reserves the right to modify the Plan either before or after the Confirmation Date to the fullest extent permitted under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, including but not limited to modifications necessary to negotiate the resolution of an objection to confirmation of the Plan. The Debtor may withdraw the Plan at any time before the Confirmation Date, or thereafter prior to the Effective Date. The Debtor may amend the Plan before or after the Effective Date as provided in section 1127 of the Bankruptcy Code.

### *H.*     *Executory Contracts and Unexpired Leases*

#### 1.     General Treatment; Rejected if Not Assumed

The Plan constitutes and incorporates a motion under Bankruptcy Code sections 365 and 1123(b)(2) to (a) reject, as of the Effective Date, all Executory Contracts to which the Debtor is a party, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) assume all Executory Contracts identified in any schedule of assumed contracts that may be included in the Plan Supplement.

The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date. Notice of the Confirmation Hearing shall constitute notice to any non-debtor party to an Executory Contract that is to be assumed or rejected under the Plan of the proposed assumption or rejection of such Executory Contract and any proposed amount of any Cure Claim.

#### 2.     Cure Payments and Release of Liability

Except as otherwise provided in a Final Order, pursuant to Bankruptcy Code sections 365(a), (b), (c) and (f), all Cure Claims that may require payment under Bankruptcy Code section 365(b)(1) under any Executory Contract that is assumed pursuant to the Confirmation Order shall be paid by the Debtor as an Administrative Claim (i) on or before the Effective Date with respect to Cure Claims that are not Disputed or (ii) within thirty (30) Business Days after a Disputed Cure Claim is Allowed, if ever, by agreement of the parties or a Final Order. If a party to an assumed Executory Contract has not filed an appropriate pleading on or before the

date of the Confirmation Hearing disputing any proposed Cure Claim, the cure of any other defaults, the promptness of the Cure Claim payments, or the provision of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters. Any party to an assumed Executory Contract that receives full payment of a Cure Claim shall waive the right to receive any payment on a Class 7 General Unsecured Claim that relates to or arises out of such assumed Executory Contract.

### 3. Bar to Rejection Damages

If the rejection of an Executory Contract pursuant to Section 7.01 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtor on or before the Rejection Bar Date. Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtor, the Estate or any of their assets and properties. Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

### 4. Rejection Claims

Any Rejection Damage Claim arising from the rejection of an Executory Contract shall be treated as a Disputed General Unsecured Claim in Class 7 for purposes of Plan treatment, and must file a motion for estimation under Section 10.05(b) of this Plan in order to participate in Class 7 treatment, in addition to satisfying the requirements of Article VII of the Plan. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Rejection Damage Claim or shall be deemed a waiver by the Debtor or any other party in interest of any objections to such Rejection Claim if asserted.

**THIS IS ONLY A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN. THE PLAN INCLUDES OTHER PROVISIONS THAT MAY AFFECT YOUR RIGHTS. YOU ARE URGED TO READ THE PLAN IN ITS ENTIRETY BEFORE VOTING ON THE PLAN.**

## VI. <u>CONFIRMATION OF THE PLAN</u>

### <u>A.</u>     <u>*Solicitation of Votes; Voting Procedures*</u>

### 1. Ballots and Voting Deadlines

A ballot to be used for voting to accept or reject the Plan, together with a postage-paid return envelope, is enclosed with all copies of this Disclosure Statement mailed to all Holders of Claims entitled to vote.

**BEFORE COMPLETING YOUR BALLOT, PLEASE READ CAREFULLY THE INSTRUCTION SHEET THAT ACCOMPANIES THE BALLOT.**

The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than _____ **p.m., Central Time, on _____2019,** at the following address:

>**Michael Leo Hall**
>**Burr & Forman LLP**
>**420 20th Street North, Suite 3400**
>**Birmingham, Alabama 35203**
>**Facsimile: _____**

**YOUR BALLOT MAY NOT BE COUNTED IF IT IS RECEIVED AT THE ABOVE ADDRESS AFTER _____ P.M., CENTRAL TIME, ON _____, 2019.**

### 2.       Parties in Interest Entitled to Vote

Any Person who, as of the Voting Record Date (i.e., _____ , 2019) was the Holder of a Claim against the Debtor and whose Claim has not previously been disallowed by the Bankruptcy Court is entitled to vote to accept or reject the Plan, if such Claim is impaired under the Plan and either (i) such Holder's Claim has been scheduled by the Debtor (and such Claim is not scheduled as disputed, contingent, or unliquidated) or (ii) such Holder has filed a proof of Claim on or before November 3, 2015, the last date set by the Bankruptcy Court for such filings (i.e., the Bar Date). Any Claim as to which an objection has been filed is not entitled to vote, unless the Bankruptcy Court, upon application of the Holder to whose Claim an objection has been made, temporarily allows such Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan. Any such application must be heard and determined by the Bankruptcy Court on or before commencement of the Confirmation Hearing. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

### 3.       Definition of Impairment

As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

>(a)       leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or

>(b)       notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:

(i)     cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code;

(ii)    reinstates the maturity of such claim or interest as it existed before such default;

(ii)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

(iii)   does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

### 4.     Impaired Classes Under the Plan

Claims against the Debtor in Classes 2, 3, 4, 5, 6, 7, 8, and 9 are impaired under the Plan, and the Holders of those Claims are entitled to vote to accept or reject the Plan.

### 5.     Unimpaired Classes Under the Plan

Claims against the Debtor in Class 1 are not impaired under the Plan. The Holders of those Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are thus not entitled to vote on the Plan.

### 6.     Vote Required For Class Acceptance

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots for acceptance or rejection of the plan. Thus, class acceptance takes place only if at least two-thirds in amount and a majority in number of the holders of claims voting cast their ballots in favor of acceptance.

The Bankruptcy Code defines acceptance of a plan by a class of equity interests as acceptance by holders of at least two-thirds in amount of the equity interests of that class that actually cast ballots for acceptance or rejection of the plan. Thus, class acceptance takes place only if at least two-thirds in amount of the holders of equity interests voting cast their ballots in favor of acceptance.

### B.     _Confirmation Hearing_

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. By order of the Bankruptcy Court, the Confirmation Hearing has been scheduled for _____ , **2019 at _____ p.m. Central Time,** in the United States Bankruptcy Court for the Northern District of Alabama, Southern Division. The Bankruptcy Court may adjourn the Confirmation Hearing from time to time without further notice other than an announcement made at the confirmation hearing or any adjournment thereof.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court on or before _____ , **2019** at the following address:

> U.S. Bankruptcy Court
> Northern District of Alabama, Southern Division
> 1729 5th Avenue North
> Birmingham, AL 35203

In addition, any such objection must be served upon and received by the following parties, together with proof of service, no later than _____ **p.m., Central Time on** _____ **, 2019:**

> **Michael Leo Hall**
> **Burr & Forman LLP**
> **420 20th Street North, Suite 3400**
> **Birmingham, Alabama 35203**

BANKRUPTCY RULE 9014 GOVERNS OBJECTIONS TO CONFIRMATION OF THE PLAN. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, THE BANKRUPTCY COURT MAY NOT CONSIDER IT.

### C. _Requirements For Confirmation of a Plan_

At the Confirmation Hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

1. The plan complies with the applicable provisions of the Bankruptcy Code.

2. The proponents of the plan complied with the applicable provisions of the Bankruptcy Code.

3. The plan has been proposed in good faith and not by any means forbidden by law.

4. Any payment made or promised by the Debtors, by the plan proponents, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

5. (a) (i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the Debtors participating in a joint plan with the Debtors, or a successor to the Debtors under the plan; and

(ii)     the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(b)     the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

6.     Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

7.     With respect to each impaired class of claims or interests:

(a)     each holder of a claim or interest of such class has accepted the plan or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated on such date under Chapter 7 of the Bankruptcy Code on such date; or

(b)     if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

8.     With respect to each class of claims or interests:

(a)     such class has accepted the plan; or

(b)     such class is not impaired under the plan.

9.     If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

10.     Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the plan, unless such liquidation or reorganization is proposed in the plan.

11.     All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

12.     In the case in which the Debtor is an individual and in which the holder of an allowed unsecured claim objects to confirmation of the plan -

(a)     the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(b)     the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)

to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

The Debtor believes that the Plan satisfies all the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all the requirements of Chapter 11, and that the Plan is proposed in good faith.

The Debtor believes that Holders of all Allowed Claims impaired under the Plan will receive payments or distributions under the Plan having a present value as of the Effective Date not less than the amounts likely to be received if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. At the Confirmation Hearing, the Bankruptcy Court will determine whether Holders of Allowed Claims or Interests would receive greater distributions under the Plan than they would receive in liquidation under Chapter 7.

The Debtor also believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that the assets and future operating revenues and income held in the Johnson Trust under the terms of the Plan will be sufficient to satisfy the Debtor's obligations under the Plan, and all creditors with Allowed Claims will ultimately be paid in full, or, with respect to the Claims of the United States, Qui Tam Claimants, and Arrowsmith, and in the event of a Trust Change Event (as defined in the Plan), will receive at least more than those claimants would receive in a Chapter 7 liquidation and more than the amount of the Debtor's projected gross income, which the Debtor projects to be less than $4 million per year during the life of the Plan and the Johnson Trust. The Debtor believes the assets to be distributed under the Plan and the Trust Agreement could be as high as $30 million, if necessary, and the Debtor believes the Plan and the Johnson Trust will last 5 years or less. These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

## _D._    _Cramdown_

In the event that any impaired Class of Claims entitled to vote on the Plan does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each such impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to that Class. A plan of reorganization "does not discriminate unfairly" within the meaning of the Bankruptcy Code if no Class receives more than it is legally entitled to receive for its claims or equity interests.

"Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

1.      With respect to a class of **_secured claims,_** the plan provides:

(a)      (i)      that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c) the realization by such holders of the "indubitable equivalent" of such claims.

2. With respect to a class of ***unsecured claims,*** the plan provides:

(a) that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the Debtor is an individual, the Debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14).

3. With respect to a class of ***interests,*** the plan provides:

(a) that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b) that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

In the event that one or more Classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired Class of Claims. For the reasons set forth above, the Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired Class of Claims.

## VII. <u>RISK FACTORS</u>

The following is intended as a summary of certain risks associated with the Plan, but it is not exhaustive and must be supplemented by the analysis and evaluation made by each Holder of a Claim of the Plan and this Disclosure Statement as a whole with such Holder's own advisors.

### <u>A.</u>   <u>*Insufficient Acceptances*</u>

For the Plan to be confirmed, each impaired Class of Claims is given the opportunity to vote to accept or reject the Plan. With regard to such impaired voting Classes, the Plan will be

deemed accepted by a Class of impaired Claims if the Plan is accepted by claimants in such Class actually voting on the Plan who hold at least two-thirds (2/3) in amount and more than one-half ($^1/_2$) in number of the total Allowed Claims of the Class voted. Only those members of a Class who vote to accept or reject the Plan will be counted for voting purposes. The Debtor reserves the right to request confirmation pursuant to the cramdown provisions in section 1129(b) of the Bankruptcy Code, which will allow confirmation of the Plan regardless of the fact that a particular impaired Class of Claims has not accepted the Plan. However, there can be no assurance that any impaired Class of Claims under the Plan will accept the Plan or that the Debtor would be able to use the cramdown provisions of the Bankruptcy Code for confirmation of the Plan.

### B.      *Confirmation Risks*

The following specific risks exist with respect to confirmation of the Plan:

      1.     Any objection to confirmation of the Plan filed by a member of a Class of Claims can either prevent confirmation of the Plan or delay confirmation for a significant period of time.

      2.     If the Debtor must seek confirmation of the Plan over the rejection of one or more impaired Classes of Claims, the cramdown process could delay or prevent confirmation.

### C.      *Post-Confirmation Risks*

The Plan Trustee's ability to pay creditors with Allowed Claims is subject to his ability to continue to generate income in the future from his existing assets and businesses and/or from other business opportunities in the future. In many instances, the Plan Trustee's ability to realize income from these businesses is dependent on the continued performance by third parties of their obligations to the Debtor or to the business entities in which the Debtor owns interests. The Debtor's businesses are also subject to the same industry specific and general economic risk factors that face all similarly-situated businesses. These additional risk factors assume confirmation and consummation of the Plan and do not include risks that could prevent confirmation or consummation of the Plan. Before voting on the Plan, each Holder of a Claim entitled to vote on the Plan should carefully consider the risk factors set forth herein as well as all of the information contained in this Disclosure Statement and the exhibits hereto.

## VIII.  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN: LIQUIDATION ANALYSIS

The Debtor has evaluated other alternatives to reorganization under the Plan, including the liquidation of the Debtor. After studying possible alternatives to the Plan, the Debtor has concluded that the Plan is the best alternative and will maximize recoveries by Holders of Claims, assuming confirmation of the Plan and consummation of the transactions contemplated by the Plan. The following discussion provides a summary of the Debtor's analysis leading to its conclusion that the Plan will provide the highest value to Holders of Claims.

Although Chapter 11 administrative costs are subordinated to the Chapter 7 administrative costs, both the administrative costs of the Chapter 11 and Chapter 7 are senior to unsecured creditors. The Debtor does not believe that a Chapter 7 would provide any tangible benefit to unsecured creditors, which could ever exceed the distributions received under the Plan. Indeed, the Debtor believes unsecured creditors would more than likely receive substantially less in a Chapter 7, in large part because the Debtors' businesses are worth much more while they continue operating than if they were sold.

A chapter 7 liquidation of the Debtors assets necessitates a relatively immediate sale of assets without regard to market conditions. The plan provides for a more orderly liquidation of the Debtors, if necessary, than a chapter 7 liquidation. The Debtor has assets which value shall be superior to a chapter 7 liquidation if they are sold as either a going concern, by taking into account market conditions, or the specialized nature of the assets. The Plan will provide the largest benefit to Creditors and contribute millions of dollars in future income to the Plan for distribution to creditors.

Accordingly, the Plan satisfies the requirement under Bankruptcy Code section 1129(a)(7) which requires that creditors receive under a plan of reorganization as much as they would receive in a Chapter 7.

## IX. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### A. *Importance of Obtaining Professional Tax Assistance*

THE FOLLOWING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN LIKELY U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN, TO PROVIDE ASSISTANCE AND GENERAL GUIDANCE, IS NOT PROFESSIONAL ADVICE, AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE BELOW DISCUSSION IS FOR GENERAL INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASE UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE, AND LOCAL, IF APPLICABLE, TAX CONSEQUENCES OF THE PLAN.

### B. *Discharge of Indebtedness*

The Internal Revenue Code ("IRC") generally provides that a taxpayer must include in income the amount of discharge of indebtedness ("DOI") it realizes when its creditors accept less than full payment in satisfaction of the creditors' undisputed debts. The realized amount of DOI is generally the difference between the amount of indebtedness and the amount received by the creditor in exchange for the indebtedness. However, IRC Section 108(a) provides that DOI will not be included in the taxpayer's taxable income if that taxpayer is under the jurisdiction of a court in a case under Title 11 of the United States Code (i.e., bankruptcy) and the DOI arises from a court ordered discharge or arises pursuant to a plan of reorganization approved by a

bankruptcy court. In the event IRC Section 108(a) excludes DOI from the income of a debtor in bankruptcy, the debtor's tax attributes will be reduced by the amount of DOI income so excluded. The tax attributes are generally reduced in a prescribed order and include NOLs, general business credit carryovers, capital loss carryovers and the tax basis of its assets. In the alternative, the debtor may make an election to alter the order of attribute reduction such that the tax basis of depreciable property would be reduced first.

### C. *Impact on Holders of Claims Against Debtors*

With respect to the Distributions to Holders of Claims under the Plan, the Debtor urges any Holder of a Claim concerned about tax consequences of the Plan on that party to consult its tax advisor. The tax consequences of the Plan to individual Holders of Claims will obviously hinge on the specific circumstances of that Holder.

### D. *Circular 230 Disclosure*

This Disclosure Statement was not intended nor written by the Debtor or the Debtor's representatives to be used (and it cannot be used) by any taxpayer to avoid penalties that might be imposed on the taxpayer in connection with (or as a result of) any of the transactions or matters described herein. This Disclosure Statement was written to support the promotion or marketing of the transactions or matters addressed in this Disclosure Statement. Each taxpayer should seek tax advice based on his or her particular circumstances from an independent tax advisor.

## X. CONCLUSION

The Debtor urges all Holders of Claims to vote to ACCEPT the Plan and to evidence such acceptance by mailing their ballots in the self-addressed stamped envelope so that they will be received by _____, 2019.

DATED: May 3, 2019.

ROBERT BRADFORD JOHNSON

*/s/ Robert Bradford Johnson*
